UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVIS ARROWOOD,

    Plaintiff,

  v.                                            Case No. 19-CV-1835

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

Travis Arrowood seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons explained below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

On September 14, 2015, Arrowood filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 14, 2015 (Tr. 13) due to epilepsy, hypotension, atrophic kidney, acute renal failure, hypertension, scoliosis, memory difficulty, seizures, depression, anxiety, and ulnar nerve entrapment syndrome (Tr. 186). Arrowood's application was denied initially and upon reconsideration. (Tr. 13.) Arrowood filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on November 8, 2018. (Tr. 31–58.) Arrowood testified at the hearing, as did Caroline Ward, a vocational expert. (Tr. 31.)

In a written decision issued February 4, 2019, the ALJ found that Arrowood had the severe impairments of epilepsy, spine disorder, organic brain syndrome, depression, and anxiety. (Tr. 15.) The ALJ found that Arrowood did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 16–18.) The ALJ further found that Arrowood had the residual functional capacity ("RFC") to perform light work, with the following limitations: no more than frequently reaching overhead to the left and to the right (for all other reaching, no more than frequently reaching to the left and to the right); no more than frequently handling and fingering with the left and right hands; no more than occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; no more than occasionally balancing, stooping, kneeling, crouching, or crawling; never working in hazardous environments such as around unprotected heights or near moving mechanical parts; never operating a motor vehicle; understanding, carrying out, remembering, and performing no more than simple, routine tasks involving no more than simple, work-related decisions with the ability to adapt to no more than routine work place changes; no more than frequently interacting with supervisors, co-workers, and the general public; and no more than frequently communicating verbally and never working in occupations that require the communication of complex verbal communications. (Tr. 18.)

While the ALJ found that Arrowood was incapable of performing his past relevant work as a fabricator assembler, the ALJ found that given Arrowood's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. 24–26.) As such, the ALJ found that Arrowood was not disabled from his alleged onset date until the date of the decision. (Tr. 26.) The ALJ's decision became the

Commissioner's final decision when the Appeals Council denied Arrowood's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## 2. *Application to This Case*

Arrowood argues the ALJ committed "two primary errors" in assessing his RFC: (1) the ALJ failed to build a bridge between the evidence and his RFC assessment limiting Arrowood to light work and (2) the ALJ failed to account for Arrowood's moderate limitations in concentration, persistence, or pace in his RFC assessment. (Pl.'s Br., Docket # 15.) I will address each argument in turn.

### 2.1  Failure to Support Limitation to Light Exertional Work

Arrowood argues the ALJ impermissibly "played doctor" when limiting him to light exertional work in his RFC. RFC is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96–8p. In this case, at both the initial and reconsideration levels, the State agency physicians opined that Arrowood could perform medium exertional work. (Tr. 67, 83.) The ALJ, however, assigned little weight to these opinions, finding that the objective medical evidence showed that Arrowood's spinal issues would make lifting weights from the medium exertional level difficult. (Tr. 23–24.) The ALJ further explained that the extensive physical limitations assigned in the RFC account for Arrowood's limitations from his epilepsy and spinal disorders. (Tr. 22.)

Arrowood argues that by rejecting the State agency physicians' opinions and assigning Arrowood an RFC of light work, the ALJ improperly substituted his own lay opinion for that of a physician. (Docket # 15 at 13.) Arrowood did not provide an opinion from any of his treating physicians regarding his specific exertional limitations. Even so, while an ALJ must consider the entire record, he need not "rely entirely on a particular physician's opinion or

choose between the opinions any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). As SSR 96-5p provides:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *4 (S.S.A. July 2, 1996). Thus, the question before me is whether the RFC is supported by substantial evidence in the record, not whether it is endorsed by a medical provider. *See Hannah-Walker v. Colvin*, No. 2:12-CV-61-PRC, 2013 WL 5320664, at *10 (N.D. Ind. Sept. 23, 2013) (finding that an ALJ's RFC finding need not be endorsed by a doctor).

In this case, the record amply supports an RFC of light exertional work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567. A job classified as "light" also requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* In his Adult Function Report dated October 4, 2015, Arrowood states that that he has no difficulty sitting or standing and is capable of walking for one to two miles before needing to rest for a "couple minutes." (Tr. 203.) Arrowood states that he has no doctor-imposed lifting restrictions and can sit for two to three hours, stand for eight hours, and walk for eight hours. (Tr. 206.) In his Adult Function Report dated June 24, 2016, while Arrowood states that he can "walk, stand, and sit for only a short [amount] of time because of his [back]," he also asserts that he can walk a "couple of miles" before needing to rest for a "little bit" before resuming walking. (Tr. 223.) Similarly, in a Third

5

Party Adult Function Report, Arrowood's mother, Dawn Roggenbuck, noted on June 30, 2016 that Arrowood's walking and sitting were not affected by his allegedly disabling conditions. (Tr. 232.) Further, during Arrowood's physical therapy appointments, he was able to complete leg presses with 140 pounds and lift up to 25 pounds. (Tr. 526, 539.) Arrowood also reported that he was cleaning up pine trees along his "long driveway" (Tr. 444) and was "doing a lot of bending over to clean up his hosta leaves" (Tr. 455). This record evidence supports the ALJ's finding of an ability to perform light exertional work, and Arrowood points to no evidence contradicting this finding. Thus, the ALJ did not err in this regard.

      2.2    Failure to Account for Moderate Limitations in Concentration, Persistence, or Pace

Arrowood argues that despite the ALJ finding that Arrowood had moderate difficulties in maintaining concentration, persistence, or pace, the ALJ failed to account for these limitations in the RFC. (Pl.'s Br. at 16.) In so doing, Arrowood argues that the ALJ improperly assigned great weight to the opinion of the State agency psychologist, Dr. JoAnne Coyle, and improperly assigned little weight to the opinion of Dr. Dennis Elmergreen, the consultative examiner. (*Id.* at 21.)

Arrowood alleges disability, at least in part, due to memory problems, depression, and anxiety. (Tr. 186.) Although his medical records list depression as a past medical condition (Tr. 485, 495, 507) and list "depression with anxiety" as a diagnosis from June 2010 (Tr. 490), the record is devoid of any treatment for these conditions. Rather, when Arrowood's treating medical providers took note of his mental condition, his mood and affect were normal. (Tr. 295, 341, 552.) Arrowood specifically denied suffering from depression or anxiety to at least one treating provider in the record. (Tr. 292.)

Given the medical records as of December 2015, at the initial level, State agency psychologist, Dr. Susan Donahoo, opined that Arrowood's psychological limitations were non-severe. (Tr. 65.) She based her opinion on the fact that Arrowood could perform all of his activities of daily living, did not report depression or anxiety to any of his medical providers, and had no referral for mental health treatment from any of his medical providers. (*Id.*) As a result of this lack of documentation, Arrowood was sent to a consultative examination with Dr. Dennis Elmergreen in August 2016. (Tr. 397.) As part of his mental status evaluation, Dr. Elmergreen noted that Arrowood stated he was not "specifically depressed nor ever suicidal[,] [he was] just concerned about being able to pay his bills." (Tr. 398.) Arrowood denied any history of mental health treatment. (*Id.*)

Dr. Elmergreen found that Arrowood's executive functioning, memory, and abstract thinking appeared intact. (Tr. 399.) He found Arrowood interacted in a meaningful fashion and expressed his thoughts clearly. (*Id.*) Dr. Elmergreen administered the Weschler Adult Intelligence Scale test, which showed Arrowood's intellectual functioning varied from average to extremely low (as to processing speed). (*Id.*) Dr. Elmergreen found that Arrowood's slow processing speed "would affect his ability to function successfully in the job setting." (Tr. 403.) Dr. Elmergreen further opined that Arrowood's ability to understand, remember, and carry out simple instructions was moderately impaired; his ability to respond appropriately to supervisors and co-workers was moderately to markedly impaired; his ability to maintain concentration, attention, and work pace was markedly impaired; and his ability to withstand routine work stressors and adapt to changes was markedly impaired. (Tr. 400.)

With the benefit of Dr. Elmergreen's examination, at the reconsideration level, Dr. Coyle opined that despite no diagnosis of a cognitive disorder, Arrowood's performance on

the Weschler test supported a finding of severe limitations, "most notably in areas impacted by speed of cognitive processing." (Tr. 81.) Dr. Coyle rejected, however, Dr. Elmergreen's impressions of marked limitations, finding that the objective data and Arrowood's daily functioning supported "severe limitations to a moderate degree." (Tr. 81–82.) Thus, Dr. Coyle opined Arrowood had moderate difficulties in maintaining concentration, persistence, or pace (Tr. 81), specifically opining moderate limitations in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 86–87). Dr. Coyle opined that Arrowood could "sustain attn/conc for simple tasks and maintain effort for two hour periods over the course of an eight hour work day and standard work week within acceptable pace and persistence standards." (Tr. 87.)

The ALJ limited Arrowood's RFC to understanding, carrying out, remembering, and performing no more than simple, routine tasks involving no more than simple, work-related decisions with the ability to adapt to no more than routine work place changes. (Tr. 18.) In so finding, the ALJ stated that Arrowood's mental status exams were often unremarkable, he received little to no treatment for mental health issues, and his mental impairments were often due to situational stressors. (Tr. 23.) The ALJ gave little weight to Dr. Donahoo's finding of no severe mental impairments because the opinion was inconsistent with the objective medical evidence showing Arrowood has difficulty handling complex decisions and tasks. (Tr. 24.) The ALJ assigned great weight, however, to Dr. Coyle's opinion, finding it more

consistent with the record. (*Id.*) The ALJ gave little weight to Dr. Elmergreen's opinion, finding it inconsistent with the objective medical evidence. (Tr. 24.)

Arrowood argues the ALJ failed to properly account for his slow processing speed in the RFC and generally should have accorded great weight to Dr. Elmergreen's opinion. (Pl.'s Br. at 20, 24.) As an initial matter, the ALJ did not err in according Dr. Elmergreen's opinion little weight. It is entirely unclear, given Arrowood's lack of mental health symptoms and treatment in the record, as well as Dr. Elmergreen's own observations, how he could have come to the conclusion Arrowood suffered from marked limitations. Arrowood told Dr. Elmergreen that he was not depressed and denied any history of mental health treatment. (Tr. 398.) Dr. Elmergreen himself observed that Arrowood was cooperative, talkative, friendly; his thoughts were organized and goal directed; he was alert despite claiming not to have slept in two days; his judgment and psychomotor speed were normal; there was no evidence of hallucinations or other psychotic symptoms; his executive functioning, memory, and abstract thinking appeared intact; he interacted in a meaningful fashion and expressed his thoughts clearly; and he seemed to have an average degree of social skills. (Tr. 398–99.) However, despite these findings, Dr. Elmergreen somehow concluded that Arrowood was either moderately or markedly impaired in his ability to remember, respond appropriately to others, concentrate, and adapt to change. (Tr. 400.) It is entirely unclear on what basis Dr. Elmergreen grounds his conclusions.

Arrowood argues that Dr. Coyle's assessment is merely a reconsideration of Dr. Elmergreen's assessment. (Pl.'s Reply Br. at 12, Docket # 20.) This is inaccurate. Dr. Coyle considered both Arrowood's treatment records and Dr. Elmergreen's evaluation, and her conclusion, as the ALJ correctly found, is consistent with the record evidence. Dr. Coyle

9

considered the Weschler test results—this is why she, unlike Dr. Donahoo, found a severe mental impairment. (Tr. 81.) Dr. Coyle specifically considered Arrowood's reduced cognitive processing speed, but only found him moderately limited in pace. (*Id.*) A moderate limitation, as the phrase is used on the Administration's Mental RFC Assessment form, "means only that 'the individual's **capacity to perform** the activity is **impaired**.'" *Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 777 (E.D. Wis. 2019) (POMS, DI 24510.063 (emphasis in original)). It does not mean that the person has no ability whatsoever to perform the task. Again, Dr. Coyle opined that Arrowood could "sustain attn/conc for simple tasks and maintain effort for two hour periods over the course of an eight hour work day and standard work week within acceptable pace and persistence standards." (Tr. 87.) The record supports this finding and Arrowood has failed to cite evidence to the contrary. For these reasons, the ALJ did not err in this regard.

## CONCLUSION

Although Arrowood argues the ALJ erred in his RFC assessment, I find the ALJ's decision is supported by substantial evidence. Thus, the Commissioner's decision is affirmed and the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of February, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge